UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PETER ROUSSEAU                          :
                                        :
         v.                             :        C.A. No. 08-339S
                                        :
MICHAEL J. ASTRUE                       :
Commissioner of the Social Security     :
Administration                          :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42

U.S.C. § 405(g).  Plaintiff filed his Complaint on September 10, 2008 seeking to reverse the decision

of the Commissioner.  On April 17, 2009, Plaintiff filed a Motion for Judgment.  (Document No. 9).

On May 18, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the

Commissioner.  (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the legal

memoranda filed by the parties and independent legal research, I find that there is substantial

evidence in this record to support the Commissioner's decision and findings that Plaintiff is not

disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion for Judgment (Document No. 9) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on November 7, 2006, alleging disability since March 16, 2006. (Tr. 109-116). The applications were denied initially and on reconsideration. (Tr. 62-74). Plaintiff requested an administrative hearing. (Tr. 79). On April 15, 2008, Administrative Law Judge Martha Bower ("ALJ") held a hearing at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified. (Tr. 19-61). The ALJ issued a decision unfavorable to Plaintiff on April 24, 2008. (Tr. 8-18). The Appeals Council denied Plaintiff's request for review on July 17, 2008. (Tr. 1-3). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by finding at Step 3 that his back impairment did not meet Listing 1.04 (disorders of the spine). Plaintiff also argues that the ALJ's RFC assessment is not supported by the record.

The Commissioner disputes Plaintiff's claims and argues that both the ALJ's Step 3 and Step 5 findings are supported by substantial evidence.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.      Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1ˢᵗ Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11ᵗʰ Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11ᵗʰ Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11ᵗʰ Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was forty-three years old on the date of the ALJ's decision.  (Tr. 109).  Plaintiff left high school in the eleventh grade (Tr. 291) and has previous work experience as a fabricator/welder, industrial mechanic and most recently as an HVAC balancer.  (Ex. 3E).  Plaintiff alleges disability due to back pain, foot drop and depression.  (Tr. 22-23).

Plaintiff's back impairment began in March 2006 when he twisted his back at work.  (Tr. 193, 212).  In the days immediately following the accident, Plaintiff's pain worsened until it became "excruciating," and he presented to Landmark Medical Center's ("Landmark") Emergency Room for pain treatment and foot drop.  (Tr. 193, 212).  An MRI performed at Landmark on March 22, 2006 revealed that Plaintiff had sacrilizaton of  L5 with degenerative disc changes at L4-L5.  (Tr. 204).  On March 28, 2006, Plaintiff was admitted to Rhode Island Hospital with a diagnosis of L5 radiculopathy.  (Tr. 207).  An MRI conducted during that hospital stay revealed left L4-5 herniated disk with degenerative disk space and spondylosis.  Id.  Plaintiff then underwent back surgery – an L4-5 diskectomy, an L5-S1 TLIF and L4-S1 screw fusion and an L5-S1 laminectomy.  (Tr. 207,

214-217).  Upon his discharge from the hospital after the surgery, Plaintiff's condition was noted to be improved, and he received a prescription for Percocet.  (Tr. 207, 208).

On April 12, 2006, Plaintiff reported he was doing "fairly well postoperatively," although he complained of significant weakness in his ankle and foot, as he had prior to surgery, and back pain.  (Tr. 223).  His gait appeared to be normal, and he appeared to be recovering "nicely."  Id. An x-ray of Plaintiff's lumbar spine on that date revealed no evidence of an acute abnormality.  (Tr. 227).

At the end of June 2006, Plaintiff again reported that he was doing well postoperatively, and, although he continued to have some pain getting up and rolling over and weakness in his left foot and ankle, he had no other weakness, numbness, tingling and/or bowel or bladder dysfunction.  (Tr. 221, 222).  He had "good tone of bulk throughout all extremities with no evidence of pronator drift" and his gait appeared normal. (Tr. 221).  An MRI that same month revealed stabilization as a result of the laminectomy at L3-L4 and L4-L5 and no evidence of malalignment or instability.  (Tr. 225). Plaintiff's treating physician, Dr. Chan Park, did not consider him totally disabled at that time.  (Tr. 320).

In August 2006, Plaintiff was still doing "fairly well postoperatively," although he continued to complain to Dr. Doberstein of low back pain with radiation to his left hip, burning to the top of his left foot, left foot and ankle weakness and persistent foot drop.  (Tr. 234, 235).  Yet, Plaintiff had an apparently normal gait and normal range of motion in his spine without evidence of paraspinal muscular spasm or tenderness.  Id.

In November 2006, a CT scan of Plaintiff's lumbar spine revealed some evidence suggesting some encasement of the existing L5 nerve root on the left and advanced discogenic bone changes

at LS-S1.  (Tr. 232).  Otherwise, there were no signs of acute process, the alignment of the vertebra was normal and the paravertebral soft tissue structures were normal.  Id.

In January 2007, Plaintiff reported to Dr. Doberstein that he could not perform activities of daily living and continued to have the same weakness of his ankle or foot as before surgery.  (Tr. 422).  He reported his pain as ranging from a five to a nine, on a scale of one to ten.  Id.  He reported taking Percocet and Valium to get through the day.  Id.  Dr. Doberstein observed that Plaintiff's gait was normal, although he had decreased range of motion in the lumbosacral spine secondary to pain and spasm.  (Tr. 422, 423).  Dr. Doberstein further observed that Plaintiff was recovering slowly, although Dr. Doberstein reportedly also informed Plaintiff that he was permanently disabled due to permanent foot drop and intractable back pain and had reached maximum medical improvement.  (Tr. 423).

In March 2007, Plaintiff continued to complain of significant back pain across his lower back with radiation to the left leg and significant weakness in his left foot and ankle, but denied any other numbness, weakness, or bowel or bladder dysfunction.  (Tr. 424).  His gait appeared to be normal, although he had decreased range of motion in the lumbosacral spine secondary to pain/spasm.  Id.

In May 2007, Dr. Ashraf Farid, a pain management specialist, evaluated Plaintiff.  (Tr. 311-312).  Plaintiff reported that he suffered insomnia from pain, and that lying down reduced Plaintiff's pain, as did heat and pain medication.  (Tr. 311).  He also catalogued Plaintiff's severe decreased range of motion on lumbar flexion and extension; tenderness upon palpation; negative straight-leg raising on the left; decreased sensation to pinprick and touch on the lateral aspect of the left leg, foot, and toes, as compared to the right; and, Plaintiff's 5/5 motor power all over except on attempting dorsiflexion of the left foot.  (Tr. 312).  Dr. Farid recommended a nerve conduction study for

Plaintiff's left leg, sacroiliac steroid joint injections, Celebrex and Lyrica. Id. He further suggested the possibility of a spinal cord stimulator if those methods of pain management failed.  Id.

A nerve conduction study performed at New England Pain Associates revealed findings that were consistent with L5-S1 radiculopathy. (Tr. 429).  On October 25, 2007, Plaintiff received a left sacroiliac joint injection of steroid and local anesthetic.  (Tr. 412).  On November 8, 2007, he received an injection in his left lumbar L5.  (Tr. 413).  On November 20, 2007, he reported excellent relief from the last injection. (Tr. 414).  On December 5, 2007, however, he reported no relief from his prior injection.  (Tr. 415).  He reported his pain was a five to a six on a scale of one to ten. Id. In January 2008, Plaintiff reported 90% "better relief" and overall pain improvement.  (Tr. 416). In February 2008, Plaintiff expressed that his medication helped his pain.  (Tr. 417).

On December 15, 2006, non-examining consulting physician Dr. Youssef Georgy reviewed the record and completed a Physical RFC Assessment in which he concluded the following with regard to Plaintiff's physical capabilities.  (Ex. 5F).  Plaintiff was able to lift twenty pounds occasionally and ten pounds frequently; he could stand or walk with normal breaks in an eight-hour workday for a total of at least two hours; he was able to sit for a total of six hours in an eight-hour workday; he was able to do limited pushing and pulling with his lower extremities; was able to climb, balance, stoop, kneel, crouch, and crawl occasionally; and, he should avoid concentrated exposure to extreme cold and hazards.  (Tr. 240-241, 243).

Plaintiff began treatment for depression in February 2007 when he presented to Landmark for apparent suicidal feelings.  (Tr. 253, 374).  Plaintiff received a psychiatric evaluation, and Landmark then referred Plaintiff to Kim Griffith, LICSW, at NRI Community Services, on an emergency basis. (Tr. 374).  Plaintiff reported to Ms. Griffith that his mood disturbance had begun

in March 2006 when he injured his back.  Id.  He reported increased depression and alcohol use since December 2006 when his relationship with his girlfriend of seven years ended.  Id.  He indicated that his increased depression included periods of social withdrawal, isolation, anhedonia, feelings of worthlessness, change in sleep and appetite and thoughts of suicide.  Id.  Plaintiff claimed that he ingested pills in three separate suicide attempts, but did not go to the hospital because he vomited.  Id.  Plaintiff did not state when these alleged suicide attempts occurred, although they seem to have occurred in the weeks before he presented to Landmark.  (Tr. 253).

During that initial assessment with Ms. Griffith, Plaintiff also reported that he has a lot of friends, attended church regularly and enjoyed reading and watching television.  (Tr. 376, 377). During the evaluation, Ms. Griffith observed that Plaintiff was visibly depressed and intermittently tearful when describing his situation.  (Tr. 381).  However, she also noted that his thoughts were well organized and goal directed without abnormal content.  (Tr. 382).  She diagnosed him with Major Depressive Disorder, single episode, moderate and alcohol abuse.  (Tr. 384).  She assessed his Global Assessment of Functioning (GAF) as 50.  Id.  She opined that he could benefit from a referral to a psychiatrist for medication.  (Tr. 385).  She also believed he should be referred to an outpatient program for counseling.  Id.  On February 13, 2007, treating physician Pamela Shervanick, DO., from NRI Community Services, noted Plaintiff was tearful, tangential and hard to direct. (Tr. 388).  She prescribed Cymbalta, Trazadone and Lexapro.  (Tr. 387).

On March 2, 2007, Melissa Pavao, LSW, began counseling sessions with Plaintiff.  (Tr. 393). In August 2007, she reviewed Plaintiff's progress in counseling in the preceding five months.  (Tr. 391).  She noted that Plaintiff had been compliant with treatment and made substantial progress. Id.  According to Ms. Pavao, Plaintiff developed coping skills to assist him in feelings of loss,

reunited with his girlfriend, spent more time with friends and rarely isolated.  Id.  Plaintiff reported the benefits of Lexapro and Trazadone and reduced his counseling appointments from once a week to once every two weeks.  Id.

In September 2007, Plaintiff reported to Dr. Shervanick that he was "doing better" and that his mood was generally good, although he had some "down" times.  (Tr. 402).  He reported that his concentration was poor at times, due to pain.  Id.  He also reported that his energy was low at times, but he felt like "things" were "moving along."  Id.  Dr. Shervanick observed significant improvement in Plaintiff's depression in response to Lexapro.  Id.  In October 2007, Plaintiff reported to Scott D. Haltzman, M.D., from NRI Community Services that his mood was better and that he was sleeping okay.  (Tr. 400).

In February 2008, Ms. Pavao recounted the previous six  months of Plaintiff's counseling.  (Tr. 339).  She observed that Plaintiff's "depression was minimal over the summer" when he reconciled with his girlfriend, although his depression had then worsened due to the relationship's failure and his inability to receive workers' compensation or disability benefits.  Id.  However, Ms. Pavao observed that overall he was using positive coping skills developed in counseling.  Id.

In January 2008, Ms. Pavao completed a mental RFC questionnaire.  (Tr. 418-419).  She found Plaintiff possessed a moderate limitation in his ability to relate to other people; a moderately severe restriction in his daily activities; moderate deterioration of personal habits; a moderate constriction in his interests; a mild limitation in his abilities to carry out and remember instructions, respond appropriately to supervision, coworkers, and customary work pressure; a mild limitation in his ability to perform simple or repetitive tasks; and, a moderate limitation in his ability to perform complex or varied tasks.  Id.

**A.     The ALJ's Step 3 Finding is Supported by Substantial Evidence**

The ALJ concluded at Step 2 that Plaintiff's degenerative disc disease in the lumbar spine, depression and substance abuse were all "severe" impairments as defined at 20 C.F.R. § 404.1520(c).  (Tr. 13).  However, at Step 3, the ALJ found that Plaintiff's back impairment was "not severe enough to meet or medically equal one of the [Listings]."  (Tr. 14).  Plaintiff challenges this finding on appeal and contends that "a review of the entire record supports a finding that [his] condition does meet the Secretary's Appendix 1 Listing 1.04, disorders of the spine."  (Document No. 9 at p. 15).  Plaintiff also faults the ALJ for failing to provide a more detailed explanation of the basis for her Step 3 finding.  Id.  Plaintiff does not, however, cite any legal authority for the proposition that a detailed explanation is required.

Listing 1.04(A) requires a showing of a special condition such as degenerative disc disease "resulting in compromise of a nerve root" with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)...

In his brief, Plaintiff identifies certain evidence which he contends supports a Step 3 finding that his back impairment meets Listing 1.04(A).  Plaintiff's analysis is, however, selective.  For instance, Plaintiff notes that the ME verified his foot drop.  (Document No. 9 at p. 17 citing Tr. 34-35).  However, Plaintiff fails to mention that the ME unequivocally testified that Plaintiff's back impairments did not meet or equal a listing.  (Tr. 53).  The ME rendered this opinion after  his review of the entirety of the medical records before the ALJ.  (Tr. 31).  Although the ALJ did not specifically discuss the ME's testimony at Step 3, she did rely on the ME's testimony in assessing

Plaintiff's RFC.  In particular, the ALJ noted that the ME, a board certified orthopedic specialist, concurred with Dr. Georgy's assessment that Plaintiff was capable of performing a range of light work.  (Tr. 15-16; Ex. 5F).  The ME's specific testimony that Plaintiff's back impairment did not meet a Listing provides sufficient evidentiary support for the ALJ's Step 3 finding.  In addition, the record includes a notation in Dr. Farid's records that Plaintiff tested negative on the straight-leg raising test during a physical examination on May 14, 2007.  (Tr. 312).  As noted above, Listing 1.04(A) requires a positive straight-leg raising test.  Dr. Farid is a treating physician who saw Plaintiff at a pain clinic.  (Ex. 10F).

The record contains substantial evidence which supports the ALJ's Step 3 finding.  Plaintiff has shown no legal error.  Even if the ALJ erred by not specifying the basis for her Step 3 finding, such error is, at worst, harmless error given the evidence of record in this case, the ALJ's express reliance on other opinions of the ME and the ALJ's RFC assessment for a range of light work.

### B.    The ALJ's RFC Assessment is Supported by Substantial Evidence

The ALJ decided this case adverse to Plaintiff at Step 5.  The ALJ assessed an RFC for a range of light work with certain exertional and nonexertional limitations.  (Tr. 15).  Based on this RFC and testimony from the VE, the ALJ determined that Plaintiff was capable of making a successful adjustment to certain unskilled positions at the sedentary and light level of work which exist in significant numbers in the economy.  (Tr. 17).

Plaintiff contests the ALJ's Step 5 finding because (1) the ALJ's RFC assessment "does not reflect the limitations, exertional and non-exertional, he faces on a daily basis," and (2) it "does not appropriately examine the mental demand of unskilled work[ ] as required by Regulations." (Document No. 9 at p. 9).

-18-

Plaintiff faults the ALJ for favoring the opinions of Dr. Georgy (Ex. 5F) and Dr. Spindell (the ME) (Tr. 53-54) over those of Dr. Doberstein – the treating neurosurgeon. Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ recognized Dr. Doberstein's status as a treating source and thoroughly analyzed the contemporaneous records of his examination of Plaintiff and found certain aspects to be inconsistent with Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms. (Tr. 15). For instance, the ALJ accurately pointed out that Dr. Doberstein noted that Plaintiff walked with a normal gait and had "no significant abnormalities other than decreased strength of the muscles in his left foot and absent Achilles tendon reflex on the left consistent with the left foot drop and decreased range of motion in the lumbar spine secondary to pain." (Tr. 15). See also Tr. 221, 223, 234, 365, 422 and 424. Significantly, the ALJ accepted Dr. Georgy's 2006 RFC assessment that Plaintiff could perform a range of light work and noted that the ME agreed

with Dr. Georgy's 2006 assessment during his testimony at the 2008 hearing.  (Tr. 15-16).  The ME reached this conclusion with the benefit of reviewing both the medical records at the time of Dr. Georgy's assessment and the subsequent records.

Plaintiff also contends that the ALJ erred by not accepting his testimony regarding the need to lie down during the day.  Plaintiff contends that this would preclude employment.  It is important to examine the exact testimony of Plaintiff and the ME to evaluate Plaintiff's argument.  First, Plaintiff did not testify that he was forced to lie down.  He testified that he "usually" lied down in response to increased pain because it was "the most comfortable position to be in."  (Tr. 47).  He testified that he spent "more than half of [his] time awake...laying down" but did not state that he was only able to lie down.  (Tr. 48).  In his brief, Plaintiff contends that it is "uncontroverted" that he "needs to lie down during the course of the day as a result of his significant low back condition." (Document No. 9 at p. 12).  (emphasis added).  Plaintiff does not cite to the record for this statement and, as noted above, the record reflects that Plaintiff chooses to lie down for pain relief.

As to the ME's testimony, he agreed that it would not be "uncommon" "to see somebody with back pain such as [Plaintiff] describes [to] take periods of rest during the day."  (Tr. 55-56). This statement is not an opinion supporting the need to lie down more often than not during the day. In fact, the ME concurred with Dr. Georgy's RFC assessment that Plaintiff was able to perform a range of light work.  (Tr. 15).  Finally, the only support for the alleged need to lie down for significant periods is Plaintiff's self-serving testimony.  However, the ALJ concluded that Plaintiff's allegations regarding the degree of his limitations was not entirely credible, id., and Plaintiff has not challenged that credibility determination on appeal.

Plaintiff's final argument is that the ALJ erred by not asking the VE to consider the mental demands of unskilled work.  However, the ALJ specifically asked the VE to consider unskilled jobs in responding to her hypotheticals.  (Tr. 58).  Moreover, the hypothetical (as did the ALJ's RFC assessment) incorporated a moderate limitation in Plaintiff's ability to sustain concentration, persistence and pace, i.e., he is only able to understand, remember and carry out simple one-, two- and three-step tasks.  (Tr. 15, 57).

Although Plaintiff disagrees with the outcome, he has shown no error in the ALJ's findings.  "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."  Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1 (1st Cir. 1987)).  In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's non-disability finding.  Plaintiff has shown no error in the ALJ's evaluation of the medical evidence.  The ALJ thoroughly reviewed and discussed the medical evidence, and her physical RFC findings are adequately supported by the record including the opinions of Dr. Georgy and Dr. Spindell.  As to the mental RFC findings, they are also supported by the ALJ's evaluation of Ms. Pavao's mental RFC assessment and the other limited psychiatric treatment records.  (Tr. 16; Ex. 20F).  Thus, the ALJ's findings are entitled to deference.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's

Motion for Judgment (Document No. 9) be DENIED.  I further recommend that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 30, 2009